In the
United States Court of Appeals
For the Seventh Circuit

No. 00-4191

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SCOTT P. LOWELL,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-CR-40018-GPM--G. Patrick Murphy, Chief Judge.

Submitted December 11, 2000/1--Decided June 20, 2001

Before MANION, DIANE P. WOOD, and EVANS,
Circuit Judges.

EVANS, Circuit Judge.  A little over a
year ago, while resolving the first
appeal in this case, we summarized the
situation in the first paragraph of an
unpublished order that said:

After founding CD Masters, a computer
company that began to do very well, very
soon, 19-year-old Scott Lowell looked
like he might well be following in Bill
Gates' footsteps. A mere 6 years later,
however, Lowell strayed far off the how-
to-be-a-billionaire path--CD Masters went
belly-up, Lowell falsified the company's
bankruptcy petition, got caught, got
charged with a federal crime, pled
guilty, and was sentenced to serve 18
months in jail and pay a $2,500 fine. He
was also ordered to pay $130,000 in
restitution. Now the only thing Lowell
and Gates share is a fervent belief that
they have been wronged by federal
district court judges.

Our order, issued on April 28, 2000,
went on to reject all, save one, of
Lowell's arguments. Although we found no
abuse of discretion by the district court
in ordering Lowell to pay $90,000 in
restitution (a direct loss to the
bankruptcy estate), we thought the
additional restitution ordered--$40,000
intended to compensate the trustee for

her additional, unnecessary labor--needed a few more turns on the lathe. We remanded the case to the district court to "decide what, if any, restitution beyond $90,000 should be ordered." So our remand was, to use an appropriate adjective, limited.

When the case returned to the district court, additional testimony from the trustee was offered and the court found the trustee to be one of Lowell's victims, and so Lowell was ordered to pay $25,906.25 in restitution to her. Now Lowell appeals again, raising a number of issues that are far beyond our limited remand and deserve little comment. For instance, Lowell argues that restitution is precluded because it violates the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000), as the information to which he pled guilty did not contain allegations regarding the applicability or amount of restitution sought by the government. We will not consider this and similar arguments because they are outside the scope of our remand, but that causes no particular harm to Lowell as the contention is without merit in the first place. See United States v. Behrman, 235 F.3d 1049, 1054 (7th Cir. 2000). Similarly, Lowell's argument that a violation of 18 U.S.C. sec. 152(3)--his offense of conviction--is not one to which the Mandatory Victim's Restitution Act applies is waived both because he did not raise the issue in the district court during his original sentencing or before us during his first appeal and because it is an issue that is beyond the scope of our limited remand. And again, were we inclined to consider this argument on its merits, it would fail, as the MVRA, we think, clearly applies.

So we turn to Lowell's last-ditch argument that a trustee is not a proper "victim" under the MVRA. It is true that at the original sentencing hearing, neither the government nor the trustee requested restitution for the trustee. It was ordered, sua sponte, by the district judge after he heard evidence of the tremendous amount of unnecessary effort expended by the trustee as a result of Lowell's attempt to cover up his crime. That this was an appropriate concern, ironically, was acknowledged by Lowell's counsel at sentencing, when he said:

As to the amount of loss, I think the only thing that is directly attributable would be the additional time of the trustee that she had to devote to this. And I will say that the time of the trustee is a loss that should be considered. The time of the trustee--and the extra time, not the time that she would have devoted otherwise . . . .

   The issues presented now are whether the trustee in this case is a proper "victim" within the meaning of the MVRA and, if so, what is the proper measure of her damages. The trustee is a victim if she is a "person directly and proximately harmed as the result of the commission of an offense for which restitution may be ordered . . . ." 18 U.S.C. sec. 3663A(a)(2). The plain language of this statute suggests to us that the trustee was indeed a victim of Lowell's fraudulent statements on CDM's bankruptcy petition which, again, he admitted were made to conceal assets. The bankruptcy code provides for the employment of private attorneys as bankruptcy trustees in all districts and empowers them to administer bankruptcy cases filed in those districts. See 11 U.S.C. sec. 321 et seq. The trustee in our case, a private attorney, was a chapter 7 "panel bankruptcy trustee" called into service by the United States Trustee's Office. In addition to her duties as a panel trustee, she retains her private bankruptcy practice. For this reason, a panel trustee is in a far different position than are direct, full-time, government employees. Lowell's argument, which attempts to analogize the trustee here to governmental employees (like an IRS auditor or a governmental investigator) who are not entitled to restitution for performing their duties, misses the mark. Moreover, Lowell's analogy also fails for the reason identified by Judge Murphy in the district court at the resentencing hearing:

that [the government has] investigating agents and prosecuting attorneys implies that there is wrongdoing criminal conduct in the first place and that's the reason they're there. The bankruptcy scheme, on the other hand, doesn't suggest that there is wrongdoing or criminal conduct. Rather, it is expected that everyone will conduct themselves straightforwardly and

honestly and testify truthfully and debts will be discharged and creditors will be paid and security interest will be recognized and commerce will go on. . . . So, I see, I mean, I don't think your analogy holds.

Bankruptcy panel trustees are, of course, compensated for their services. In addition to a $60 fee paid to the trustee by the government for every bankruptcy case she closes, a panel trustee's compensation in a given case is based upon a percentage of the value of the assets liquidated and disbursed to the estate's creditors. It is obvious, therefore, that when Lowell fraudulently misstated the extent of CDM's assets in the admitted effort to conceal them from the trustee, he "directly and proximately harmed" the trustee herself, as the fraud prevented her from easily identifying, seizing, liquidating, and dispersing the concealed assets. This, of course, reduced her compensation and increased her costs.

The Court of Appeals for the First Circuit has specifically recognized that the payment structure we just described, and the effect concealment of estate assets has on her compensation, renders a chapter 7 trustee a "victim" of violations of sec. 152(1) and (3) for purposes of applying the "multiple victim" enhancement of sec. 2F1.1 of the sentencing guidelines. In United States v. Shadduck, 112 F.3d 523, 531 (1st Cir. 1997), the court observed:

[A]s the representative of the debtor estate, see Bankruptcy Code sec. 323(a), 11 U.S.C. sec. 323(a), it is incumbent upon the trustee to collect and reduce to money all nonexempt assets of the estate, id. sec. 704(1). Accordingly, although the trustee has no pre-petition claim to property of the debtor and therefore does not qualify as a "creditor," a prescribed portion of the net recoveries from any "property of the estate" administered by the trustee comprises a priority cost of administration as provided in [the chapter 7 trustee compensation provisions of the] Bankruptcy Code sec.sec. 326(a), 330(a)(1), 503(b)(1)(A) & 507(a)(1). Consequently, not only creditors but the chapter 7 trustee as well may be victimized directly by a bankruptcy fraud to the extent it deprives the estate of

assets otherwise subject to administration.

Id. at 531. Recognizing that the case is relevant only by analogy, we nevertheless conclude that the direct and proximate harm described by the First Circuit, which renders the chapter 7 trustee a victim, applies with equal vigor to this trustee.

Finally, upon reviewing the record, we determine that Judge Murphy did not abuse his discretion when, on remand, he settled on $25,906.25 as the amount of restitution due to the trustee. The evidence disclosed that the trustee was required to spend approximately 207 unnecessary hours in this case as a direct result of Lowell's fraudulent statements on the bankruptcy petition and schedules. Also, the fact that the trustee receives $125 per hour for out-of-court work and $150 per hour for in-court work in her private practice is uncontradicted. Thus, the sum settled on as restitution, $25,906.25 (207.252 hours X $125 per hour), must stand.

AFFIRMED.

FOOTNOTES

/1 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a); Cir. R. 34(f).