In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3325

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SAM GAMMICCHIA,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 964-2—**Charles R. Norgle, Sr.**, *Judge*.

———————

ARGUED JULY 11, 2007—DECIDED AUGUST 9, 2007

———————

Before POSNER, COFFEY, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant appeals from his
30-month prison sentence for obstruction of justice. The
appeal bespeaks a misunderstanding of federal sentenc-
ing law under the regime created by the *Booker* decision.
When as in this case a criminal appeal is frivolous, the
defendant's attorney should file an *Anders* motion rather
than waste the court's time on a lost cause. We write in the
hope of heading off what is assuming the proportions of
an avalanche of utterly groundless sentencing appeals.

The defendant was a political appointee in the office
of the Clerk of the City of Chicago, James Laski, a codefen-

dant. In the course of a grand jury investigation into the acceptance of bribes that the Clerk had received from Michael Jones and others, the defendant assisted Laski in trying to persuade Jones's wife to testify falsely. Later, fearing that Jones and his wife were cooperating with the prosecutors (they were), the defendant threatened Michael Jones, saying "if I go to jail, you have to go under witness protection."

The defendant pleaded guilty to obstruction of justice, and his guidelines range was enhanced to reflect his having threatened Jones. The enhanced range was 30 to 37 months, and the judge sentenced the defendant to 30 months. The defendant claims that the sentence is unreasonably long, and that a sentence of a year and a day, which with good-conduct credits would entitle him to be released after 319 days (a little over 10 months), see *White v. Scibana*, 390 F.3d 997, 999-1000 and n. 1 (7th Cir. 2004); 28 C.F.R. § 523.20, would be appropriate.

He advances two grounds for the extraordinary lenity that he seeks. The first is that his codefendants received lighter sentences—Laski received only 24 months and the other codefendants received even lighter sentences. But the others had cooperated in bringing down Laski and Gammicchia; and Laski had not threatened anyone. The defendant's second ground is that his wife has cancer and other ailments and that he is in poor health as well.

A judge can sentence a defendant outside the defendant's guidelines range, but if he sentences the defendant within the range, as in this case, this court presumes that the sentence is reasonable, e.g., *United States v. Garner*, 454 F.3d 743, 751 (7th Cir. 2006); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); see also *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006) (per curiam), and the

Supreme Court has held that the presumption is proper. *Rita v. United States*, 127 S. Ct. 2456, 2462-63 (2007). It can be overcome, moreover, only in an unusual case. "[I]t will be the rare sentence indeed that was *required* under the Guidelines before *Booker* but *forbidden* afterward, when discretion has gone up rather than down." *United States v. Gama-Gonzalez*, 469 F.3d 1109, 1110 (7th Cir. 2006) (emphasis in original); see *United States v. Williams*, 436 F.3d 767, 768 (7th Cir. 2006); *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

There are two reasons for the very limited appellate review of a sentence that is within the properly computed guidelines range. The first is the Supreme Court's observation in *Rita v. United States*, *supra*, 127 S. Ct. at 2463, 2465, that such a sentence reflects the confluence of the judgments of the Sentencing Commission and the sentencing judge. The second reason is the vague and nondirectional character of the only guidance that the law offers a federal sentencing judge, or the appellate court reviewing the sentence, besides the guidelines themselves (and of course the maximum and minimum sentences fixed by Congress)—namely the set of sentencing factors in 18 U.S.C. § 3553(a). A partial list of those factors, which however covers most cases, including this one, is as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

\*      \*      \*

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

The first ground pressed on us by the defendant gestures toward subsection (6) (unwarranted disparities) and the second toward subsection (1) (characteristics of the defendant). There was no unwarranted disparity. Nothing is more common than for codefendants to receive different sentences, since often and in this case though they are tried together they are convicted of different crimes or, if convicted of the same crimes, nevertheless they engaged in misconduct of different gravity.

The defendant's bad health can be a relevant characteristic. *United States v. Wurzinger*, 467 F.3d 649, 652-53 (7th Cir. 2006); *United States v. Bullion*, 466 F.3d 574, 576 (7th Cir. 2006). The imprisonment of a very sick person can make the disutility imposed by prison greater than it would be for a healthy person even if, as can be assumed (certainly in the federal prison system), the sick inmate receives adequate medical care. That was a ground for departure even when the guidelines were mandatory. *United States v. Krilich*, 257 F.3d 689, 693 (7th Cir. 2001). Also, as noted in the *Bullion* case, infirmity can reduce the risk of recidivism and thus the benefit to society of a long sentence. Anxiety about one's sick wife could also increase the disutility of imprisonment. *United States v. Kane*, 452 F.3d 140, 142-43 (2d Cir. 2006) (per curiam); *United States v. Brown*, 449 F.3d 154, 160 (D.C. Cir. 2006).

But these are considerations for the sentencing judge, not us, to weigh against the gravity of the defendant's crime and the other factors in section 3553(a). The factors are intangibles, "weighable" only in a metaphorical sense, that the sentencing judge is in a better position than the appellate judges to place them in the balance with competing considerations. The sentencing judge in this case said he did that and we have no reason to doubt that he did. His sentencing the defendant at the bottom of the guidelines range was an exercise of lenity, since the defendant had committed a serious breach of the public trust exacerbated by his threatening a witness. The defendant's brief and oral argument present no even colorable argument that the sentence is unreasonably severe.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*